FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 DEC 16 AM 11: 01

U.S. DISTRICT COURT
N.D. OF ALABAMA

WILLIAM FOLSOM,,  }
    Plaintiff  }
      } CIVIL ACTION NO.
vs.  }
      } CV-96-AR-2917-S
AMERICAN AIRLINES, INC.,  }
    Defendant  }

ENTERED

DEC 1 6 1997

MEMORANDUM OPINION

    In the case at bar, William Folsom ("Folsom") sues American Airlines, Inc. ("American") for injuries allegedly sustained upon landing in Miami, Florida on a February 15, 1995 American flight from St. Martens. Folsom seeks damages pursuant to Article 17, or in the alternative Article 25(1) of the Warsaw Convention ("Convention"). Before the court is American's motion for summary judgment. American correctly asserts that there is no evidence to support a finding that the landing in question constituted an "accident" pursuant to Art. 17 and therefore Folsom's claim must be dismissed.

    Article 17 of the Convention provides that an airline is strictly liable for injuries suffered by passengers resulting from an "accident" during the course of an international flight that either originates or terminates in the United States.[1] The

---

[1] Article 17 provides: "The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other

Convention does not define the term "accident," but the United States Supreme Court has interpreted the term to mean an "unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405, 105 S. Ct. 1338, 1344 (1985). Even where a passenger can prove injury as a result of an airline "accident," the Convention limits recovery unless the passenger can also prove, pursuant to Art. 25, "wilful misconduct." *Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462, 1468, (11th Cir.), *rev'd on other grounds*, *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 111 S. Ct. 1489 (1991).[2]

What type of landing constitutes an "accident" for purposes of Art. 17? There is very little precedent on this issue. The court in *Salce v. Aer Lingus Air Lines*, No. 84 Civ. 34444 (CES), 1985 WL 1029, at * 1, 5 (S.D.N.Y. May 1, 1985), rejected an airline passenger's claim for injuries purportedly suffered after a "hard landing." The court held, *inter alia*, that Salce had failed to show by a preponderance of evidence that the landing

---

bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

[2] Article 25 states in pertinent part: a "carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct."

2

was "anything other than normal and routine" *Id.* at 5. Salce presented no objective evidence to support his perception that the landing was unusual. See *id. at 5*. None of the other 148 passengers had complained about the landing and none of the crew members had filed a report regarding the landing. *Id.* at 3 - 4. In addition, there was no evidence that the aircraft's oxygen masks dropped, overhead bins flew open or ceiling panels came loose. *Id.* at *3. Salce's only supporting evidence was provided by his subordinate employee who testified that Salce's head "did take a jolt on landing." *Id.* at *5. Such evidence was not enough to show that the landing was an "accident," held the court *Id.*

Pursuant to Art. 17, Placido Salazar sued Mexicana Airlines for injuries he sustained after one of its aircraft "bounced twice" within a one second interval upon landing in Guadalajara, Mexico. *Salazar v. Mexicana Airlines*, 20 Avi. 17,114 (W.D. Tex. 1986). A Texas federal district court dismissed Salazar's complaint, with prejudice, holding that he had failed to show that the landing was unusual. *Id.* at 17,115. While unidentified passengers of unknown number made negative comments after touchdown, none complained to airline officials. *Id.* at 17,114 - 17, 115. In addition, none of the crew members found the landing noteworthy. *Id.* at 17,114. Finally, emphasized the court, an

3

airline passenger with unique sensitivities cannot maintain a claim against an airline for injuries that develop within the course of "normal and expected" flight operations. *Id.* at 17,115 (citing *Air France*, 470 U.S. at 406, 105 S. Ct. at 1345).

This court was only able to find one other "hard" landing case, *Mathias v. Pan-American World Airways, Inc.*, 53 F.R.D. 447 (W.D. Pa. 1971). However, in *Mathias*, the court failed to reach the issue of whether a "hard" landing constituted an "accident" for purposes of Art. 17, because the defendant never raised the issue.

The present case is much like *Salce* and *Salazar* where there was no evidence that the "hard" landing was "unusual." Folsom and his wife both testified that the landing in question was "forceful," "shocking" and "hard." As a result of the landing, Folsom claims that he suffered a back injury. The aircraft used on the flight in question holds 188 passengers. Dermitt Dep. at 19. Yet, Folsom has introduced no evidence from a single passenger indicating that the "hard" landing was "unusual," as defined in Art. 17. Indeed, Folsom testified that he did not overhear anyone complain about the landing. Folsom Dep. at 19. Assuming, as the court must for purposes of summary judgment, that Folsom and his wife truthfully perceived that the landing

4

was "hard," there is nothing in the record to support a finding that the landing was "unusual." When an "injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply." *Air France*, 470 U.S. at 406, 105 S. Ct. at 1345.

Folsom attempts to create a genuine issue of material fact by quoting the deposition testimony of pilot Fred Dermitt who was the first officer on the flight in question. Dermitt, who landed the aircraft in Miami, testified that under ordinary circumstances he would expect to have a smooth landing and indeed such a landing is his goal as a pilot. Dermitt Dep. at 56 - 57, 49. Thus, ordinarily he does not expect a jolt or thump upon touch down. *Id.* at 62. On the other hand, Dermitt also testified that there are conditions under which it becomes necessary for the pilot "to put the airplane on the ground firmly." *Id.* at 63. Snowy or icy conditions, a shorter than normal runway, or air traffic on the runway, for example, might necessitate a firm landing. *Id.* at 64. While Dermitt would have remembered unusual conditions such as snow or ice in Miami, he does not recall anything about the flight in question, such as whether or not there was air traffic on the runway. *See id.* at

5

64 - 65. Finally, Dermitt testified that he has experienced firm landings where the overhead compartments did not open. *Id.* at 68.

Such testimony fails to provide even a scintilla of evidence that the landing at issue here was "unusual." Dermitt's testimony, that most landings are smooth and that he has experienced hard landings where overheard storage bins did not fly open, does not create a genuine issue of material fact. Although most landings are smooth, any seasoned traveler is well aware that a "hard" landing is not an "unusual" condition. Such landings occur frequently, as does air traffic on the runway, one of the conditions which might necessitate a "hard" or "firm" landing. While this court is not willing to say that evidence of aircraft damage, passenger complaints to airline officials, crew member comments or reports, displacement of oxygen masks, or opened overheard storage compartments are required to show that a landing was "unusual," such objective evidence would have proved helpful.

Folsom also points to language in *Air France* v. *Saks*, a United States Supreme Court opinion, to support his opposition to summary judgment. 470 U.S. 392, 105 S. Ct. 1338. In *Air France*,

6

the Court noted that "[i]n cases where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury." *Id.* at 405, 1345. This passage does not support Folsom's claim because the focus of the passage is contradictory evidence on the issue of causation. Moreover, in the present case there is no contradictory evidence on the issue of whether the landing was unusual. There is no evidence on that issue whatsoever! Accordingly, American's motion for summary judgment on Folsom's Art. 17 claim will be granted.

Although both have parties failed to address Folsom's Art. 25 claim, it too cannot survive summary judgment. In the absence of evidence that the landing constituted an "accident," Folsom cannot contend, much less produce evidence, that American's conduct constituted "wilful misconduct." *See Tseng v. El AL Israel Airlines, Ltd.*, 122 F.3d 99, 103 (2nd Cir. 1997) ("[T]he finding of an 'accident' under Article 17 is a prerequisite to the imposition of any liability for the personal injuries of a passenger. Article 25 simply describes a subset of 'accidents' that are more egregious and to which a greater degree of culpability attaches."). Accordingly, American's motion for summary judgment on Folsom's Art. 25 claim will also be granted.

7

DONE this 16th day of December, 1997.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE